(87 South. 502)

No. 23058.

### PRICE v. CADDO–RAPIDES LUMBER CO., Limited, et al.

(Jan. 31, 1921. Rehearing Denied Feb. 28, 1921.)

*(Syllabus by Editorial Staff.)*

Brokers ⬅40—Contract held to provide for payment of commissions on sales of lumber on which broker made advances only.

A contract between plaintiff and a manufacturer of lumber, under which plaintiff was to make advances on lumber manufactured, at the option of the manufacturer, and which employed plaintiff to sell on a brokerage commission of 10 per cent. all lumber manufactured at the mill "upon which lumber advances are to be made as hereafter provided," *held* to provide for the payment of commissions only on lumber on which plaintiff made advances, and, no advances having been made, nothing was due.

Appeal from Thirteenth Judicial District Court, Parish of Rapides; W. F. Blackman, Judge.

Action by Farley Price against the Caddo-Rapides Lumber Company, Limited, and others. Judgment of dismissal, and plaintiff appeals. Affirmed.

Thornton, Gist & Richey, of Alexandria, and Sanders, Brian & Sanders, of New Orleans, for appellant.

Blackman, Overton & Dawkins, of Alexandria, for appellees.

O'NIELL, J. Plaintiff appeals from a judgment dismissing his suit on an exception of no cause of action.

The suit is for damages for breach of contract. Plaintiff claims a brokerage commission of 10 per cent. on the sales of all lumber manufactured at defendants' mill during the year beginning on the 9th of August, 1916, and ending on the 9th of August, 1917. The contract is annexed to and made part of plaintiff's petition. It is alleged that, soon after signing the contract, the defendants notified plaintiff that they would not avail themselves of their right to borrow or obtain advances from him, and that, in fact, they did not borrow from him or mortgage any of their lumber to him. The only question presented is whether defendants were obligated to pay the commission on all lumber manufactured during the period specified, or only on the part that was to be mortgaged to secure any loan or advance of money that defendants might obtain from plaintiff. The decision of the question depends entirely upon a proper interpretation of the language of the instrument.

In the first clause of the contract, the lumber which plaintiff was employed to sell on the brokerage commission of 10 per cent. is described as "all of the lumber to be manufactured by them [meaning defendants] at their mill near Glenmora, Rapides parish, Louisiana, upon which lumber advances are to be made, as hereafter provided, by said second party [meaning plaintiff] or through his efforts."

If the parties had intended that the brokerage commission should cover the entire output of the mill, it would have been an easy matter to describe the lumber as "all of the lumber to be manufactured by them at their mill near Glenmora, Rapides parish, Louisiana." The only plausible reason for further describing the lumber as "upon which lumber advances are to be made," etc., was to limit the brokerage contract to the lumber on which advances would be made, and which would be mortgaged to secure the advances.

The next clause in which the lumber affected by the brokerage contract is described is that in which plaintiff obligated himself to sell the lumber at the best market prices obtainable. The language throws no light upon the question at issue, because the lumber is there described merely as "all lumber as above described."

In the next clause, however, in which it is stipulated that the lumber to be sold by plaintiff is to be invoiced by him, the lumber is described as "all lumber on which advances are made under this contract." That description plainly limits the brokerage contract to that part of the lumber on which defendants would have obtained advances.

In the next paragraph, it is stipulated that the defendants should have the right to sell "any of said lumber" which the plaintiff had not sold, provided that defendants should obtain as good prices as those obtained by plaintiff for similar grades of lumber, and provided that plaintiff, or the holder of the mortgage notes to be given by defendants, should approve in writing the purchasers' credit standing, and provided, further, that plaintiff should receive his brokerage commission of 10 per cent. on the sales made by defendants. The only plausible reason for the stipulation that the plaintiff, or the holder of the notes secured by mortgage on the lumber, should approve the credit standing of the purchasers of lumber sold by defendants, was that the lumber which defendants were thus permitted to sell would be affected by a mortgage. The stipulation, therefore, indicated that the brokerage contract was limited to the lumber that would be affected by mortgage to secure advances made or procured by plaintiff.

The contract for advances to be made by plaintiff plainly left it optional with the defendants to determine what amount of advances they might obtain; and it was plainly stipulated that the only lumber that would be mortgaged to the plaintiff would be that on which advances would have been obtained. Plaintiff's agreement or obligation was to loan or advance to defendants a sum not exceeding $30,000, as representing which defendants were to execute their promissory note or notes "for the amount they should desire to borrow, from time to time," which notes were to mature six months from their date, were to bear interest at 8 per cent. per annum from their date, and were to be secured by mortgage in favor of such person as plaintiff might designate, on "all of said lumber upon which the loan shall have been made." It was stipulated that the loan should not exceed, in any case, $12 per M feet on No. 2 common and better grades of cypress, and $8 per M feet on No. 2 common and better grades of Tupelo gum. It was further stipulated that plaintiff should have the right to limit the proportion of common grades on which the advances would be made to 35 per cent. of all No. 1 and No. 2 common cypress, and to 25 per cent. of No. 2 common Tupelo gum "lumber covered by said advances." That stipulation shows plainly that the obligation to make advances

on the lumber was limited, not only to the No. 2 common and better grades of lumber, but also to the proportion of No. 1 and No. 2 common grades of cypress and of the No. 2 common Tupelo gum, on which plaintiff would make advances. In other words, plaintiff reserved the right to reject and exclude from the contract all except 35 per cent. of No. 1 and No. 2 common cypress; and all except 25 per cent. of No. 2 common Tupelo gum, from each month's cut of lumber, on which he was to make advances. To illustrate, if in a month's cut of 300,000 feet of cypress, there should be 50 per cent. of No. 1 and No. 2 common, plaintiff had the right to reject 69,231 feet of those grades, so that the remaining 80,769 feet of those grades would be 35 per cent. of the total of 230,769 feet remaining. In like manner, if, in a month's cut of 300,000 feet of Tupelo gum there should be 50 per cent. of No. 2 common, plaintiff had the right to reject 100,000 feet of that grade, so that the remaining 50,000 feet of that grade would be 25 per cent. of the remaining 200,000 feet of No. 2 common and better.

There is another clause in the instrument which shows plainly that all of the lumber to be manufactured at defendants' mill was not covered by the contract. We refer to the stipulation that the plaintiff, or the holder of the note or notes secured by mortgage on the lumber, should have the right to keep a representative at the mill, at the expense of the defendants. The stipulation was that the representative should have entire charge (subject only to instructions from plaintiff or the holder of the mortgage note or notes) of the manufacturing, yarding, piling, grading, and shipping of said lumber, "and to have entire and sole possession of all of the lumber covered by this contract." It appears, therefore, that, although plaintiff's representative was to have charge or supervision over the manufacturing, yarding, piling, grading, and shipping of all lumber man-

ufactured during the year, he was to take possession of only the lumber covered by the contract. The manifest purpose was to make sure that plaintiff would have a mortgage upon, and receive his commission upon, all of the lumber covered by the contract. If the intention had been that the entire output of lumber should be covered by the contract, there would have been no reason for describing the lumber of which plaintiff's representative was to take possession as "all of the lumber covered by this contract."

In another paragraph of the contract, it was stipulated that defendants should insure the mortgaged lumber in favor of plaintiff for an amount not less than $15 per M feet of cypress and not less than $12 per M feet of Tupelo gum, "on all lumber mortgaged." The stipulation shows that the entire output was not to be mortgaged. It is certain that the only lumber that would be mortgaged would be that on which money had been loaned or advances made. It is also certain that plaintiff had no privilege of selling, or right to receive a brokerage commission upon, lumber upon which advances were not obtained. And it is also certain that defendants were not obligated to borrow any specified sum, but had the right to borrow "the amount they should desire to borrow, from time to time."

The last clause of the contract is the only one that might be construed as allowing plaintiff a brokerage commission on the entire output of the mill, viz.:

"This contract shall cover all lumber manufactured by first parties at their mill aforesaid for one year from this date."

Our opinion is that the purpose of the expression was merely to fix the term of the contract, which had not been theretofore fixed. The expression, "This contract shall cover all lumber manufactured," etc., denoted the potential scope of the contract, the maximum quantity of lumber, on certain proportions of which, theretofore specified,

plaintiff would make advances or loans of such sums of money as the defendants might require, from time to time; which proportions, as theretofore stipulated, would be mortgaged to secure the advances; and on which proportions, as theretofore stipulated, plaintiff would receive a brokerage commission for selling the same. It would be unreasonable to say that this last and general clause, "This contract shall cover all lumber manufactured," etc., should control or destroy all previous stipulations as to the exact quantity, proportion, or grades, of lumber, on which plaintiff would make loans or advances for such sums as the defendants might require, and on which plaintiff would receive a brokerage commission.

Our conclusion is that the contract sued on was merely an executory contract, which would have become effective only to the extent to which the defendants might have availed themselves of the privilege of borrowing money or obtaining advances from plaintiff. As they did not borrow any money or obtain any advances, their lumber did not become affected by an obligation on their part, either to mortgage the lumber or to pay a brokerage commission for selling it.

The judgment appealed from is affirmed at appellant's cost.

SOMMERVILLE, J., takes no part.